May it please the Court, I'm Colin Kaiser from the Department of Justice. I represent the appellants in this case. And with the Court's permission, I'd like to reserve two minutes of my time for... All right, if you can watch your time, but I'll try to help you. Thank you, ma'am. This Court should reverse the District Court in this case because the District Court lacked the power to order citizenship by estoppel, which is essentially what it did. The United States Supreme Court... I hate to jump in on you like that, but when I read the District Court's order, I know that was your argument in your brief, I couldn't see that it ordered naturalization. It said, it's further ordered that petitioners amended petition for writ of habeas corpus and is granted petitioners hereby release unless DHS processes his application for naturalization. And so I didn't see an order to process. It seemed to be an alternative order. Yes, Your Honor. I understand that and I read that as well with the unless language. However, it's a case, I think, that the order is badly drafted because you can't really read the unless as an either or because if the government had opted to allow him to file his naturalization petition and adjudicate it non-proton, then it would have had to release him. So it has to be an and. Can you walk me through that again? I'm just having trouble following that. Especially since the last line of that order says DHS and BICE, I guess, shall determine within 30 days whether they will grant permission to file the said forms. And so it does seem to be permissive to DHS rather than an order. So can you just walk me through your explanation? Yes, Your Honor. The order was to release him, but he wasn't in federal custody at any, at that point. He was in state custody by the State of Nevada for a felony possession of a stolen car, I believe it was. Well, let's stop there. Okay. Had he been in federal custody based on an immigration charge before he ended up in Nevada state custody? Yes, he had been in immigration custody. He was released on a bond. And then as part of the sort of very complex history of this case, he was, the case came up to this circuit and then went back down to the district court. However, at the point that he went into state custody on state charges and there was no immigration, I-247 detainer lodged against him while in state custody. Was he on a bond still? The state custody extinguished any federal custody that there was. There was no final order of removal. Well, wait, let's just, he was on an, it was out on an immigration bond. Then he gets arrested for some Nevada charge. Then he goes to Nevada custody. But when he went to Nevada custody, immediately preceding that, he'd been on an immigration, out on an immigration bond, correct? Yes, he had been bonded out by judge. By the district court? By the district court at the point that he went into state custody. Okay. Now what happens to that bond? Well, the bond is in place for the pendency of the removal proceedings. However, the immigration judge ruled that the district court's granting of collateral estoppel didn't apply into the immigration proceedings. And that was reversed by the Board of Immigration Appeals after the appellants had filed their brief prior to the respondents filing their brief. So at the point that the Board of Immigration Appeals terminated the proceedings, then the bond terminated. And what was, what is that date? Is that October 2008? That is October 3 of 2008. Okay, so these, this case was filed as a habeas before that, correct? It was initially filed as a habeas prior to coming up to this court, I believe, in 2006. So are you saying that the bond was pending at the time of this October 12, 2007 order? The October 12, 2007 order, he would, he had, he had gone into state custody in July of 2007. But was the bond pending while he was in state custody? I believe he was, he was at the point that he was arrested earlier than that by the Nevada State Authorities and he was in state custody up to the point of his trial in August. I believe that he was out on an immigration bond at that point. But the bond, because, but you're telling us now that the bond didn't dissipate, expire, or go into another world until the BIA's non-appealable order in October 2008, correct? Certainly it was extinguished at the point that the BIA terminated the removal proceedings. It could not have been in any effect after that. I believe the position of the government is that it was terminated at the point that he went into state custody and was not, there was no detainer lodged against him by the federal authorities. I guess I'm not sure why that makes a difference. Because the district court seemed to analyze the pending removal proceedings as being a form of custody and that he was subject to a form of restraint that other people would not be. And so whether the district court was right or wrong on that, the way the district court feels is the petitioner is released from custody on account of the removal proceedings brought against him. So as if to say that pending cloud of removal proceedings he is released from unless DHS processes the naturalization application. Is that wrong to read it that way? That's what the district court's analysis seemed to suggest. So I think if I understand your question correctly, Your Honor, at the point that the judge granted the habeas petition, that would have dissolved the bond if that's, because he had granted it and at that point, or subsequent to that, the BIA then also terminated the removal proceedings. But in any case, in any event, by October of 2007, he was not in federal custody at all, and therefore, and this ties into the jurisdictional nexus of this case, the district court had lost jurisdiction, habeas jurisdiction at the point that there was no custody of any kind. There was no physical custody over him because he was in the state of Nevada custody and then subsequently released and he's free now, not subject. Okay, well, now let's figure out. Let me ask you this. If you're not an alien of the United States, are you a citizen? No, Your Honor. Okay, what is his status? His status is entirely unclear after the district court's ruling in this case because you cannot create, as the Supreme Court has said in Pangilinian and this Court has said in Mustanich, you cannot create a citizenship by estoppel. So the government is currently estopped from claiming he's an alien. He's not a citizen. He has never been naturalized. He's not a national, which is something besides a citizen or an alien. There's a category of U.S. nationals and typically, I think, they're born in American Samoa. I believe now Guam and the Virgin Islands, those people have got statutory citizenship. And he's not an American Samoan. He's a Mexican. So his status, and this is why this case is not moot essentially, is that his immigration status is unclear. It is clear that he's not a U.S. citizen. It is also clear that the agency feels, based on collateral estoppel, having twice decided, the Board of Immigration Appeals, twice decided that they have to terminate removal proceedings. So essentially, Mr. Herrera is in a state of judicial... He can't be deported. He can't be deported or removed. And you can't say that he's an alien. And we cannot say that he's an alien, yet he's not a citizen. So if he goes back under the district court's order and applies after the fact for naturalization, is that still an avenue open to him? If he applies for naturalization, he will be precluded from being granted naturalization because he is an aggravated felon. And there is no basis in the immigration and nationality... Unless it's non-proton 1972, I guess, right? Yes, Your Honor. Isn't this the government's problem and not the court's problem? The court can't confer citizenship on the applicant. It's for the government. The government has made a determination. The BIA is the government. The government has said that, you know, he is to be released. And as far as his status is concerned, I guess if the government wants to bring further proceedings to remove him, it can do so. It may not be successful, but I don't see how the court gets involved in this in Brockville at all under the law. Maybe you can explain what exactly you want us to do. Well, preliminarily what the government is asking here is that this court reverse the district court and state that the court... What does that mean? What does that mean? Would reverse the granting of the amended habeas petition and under Munsing where the Supreme Court case vacate the district court's decision, which would leave Mr. Herrera in a status of... The same status he's in right now. Yes, Your Honor, but in... But I thought you actually, I thought you told us that he's not in custody, therefore he can't have a habeas. So what's... Let me just get straight. What's the government's position? Do we have no jurisdiction because he's not in custody or we have jurisdiction and you want us to reverse the grant of habeas? The case is not new. That's not my question. My question is do we have jurisdiction? You've taken two mutually inconsistent positions here, if not more. So I'm trying to understand what the government's position is today. The government's position is that the district court did not have jurisdiction over the second, over the amended habeas petition. But he's released now, so that's academic. And he's released now in an immigration status that is unclear to the United States. The government released him. I mean, that makes the habeas scenario academic and moot to me. I'm missing something. The state of Nevada released him at the end of his sentence and the government has not lodged an immigration detainer on him feeling that... Well, you can't. I thought that he's not an alien. You're stopped from saying he's an alien, so... Which is the crux of the problem in this case and why... But it's not one of our... I mean, it's interesting here because it's the administrative adjudication system that has made that determination. It seems like you want us really to overrule the BIA's determination and, you know, that goes back some years ago. That stems from the fact that in the criminal proceeding he was a defense and the BIA recently has pretty much gone ahead and said you're stopped. I mean, I think you really want us to reverse the BIA's determination. No, Your Honor. The government isn't asking that this court reverse the BIA. In the most recent BIA opinion of October of 2008, they dropped a footnote saying that if the government were able to obtain a judicial vacater of the collateral estoppel, then they would... But that was the criminal decision back in 2005 and that's not before us here. Yes, Your Honor. The government had not appealed that, the dismissal of the indictment back in 2004 because the government at that point had another avenue open to it which was removal proceedings. So we can't reach the only issue that the BIA said would make a difference to its determination. Certainly if this court were to decide this case in a way that called into question the application of collateral estoppel from dismissal of the indictment over into civil habeas proceedings, then the government could readdress that issue. That's not been, that's really not on appeal to us. No, Your Honor. We can't just sort of throw out a few words of wisdom to the BIA. No, Your Honor. And the government isn't asking for that. But the government... Let's get back to what you are asking. Tell us what you, in your, what is it you want the court to do? Because you're the appellant. Yes, Your Honor. The government is asking that this court overturn the district court's granting of the second, of the amended habeas petition. And on jurisdictional grounds, hopefully. Jurisdictional grounds meaning that there's no jurisdiction because there's no custody? The district court did not have jurisdiction at that time because it didn't have custody. Your Honor, I see that I'm under two minutes, if I may reserve the balance of my time. That's fine. So I guess the $64 million question is what happens to this guy now? Right. Well, I had a short introduction, Your Honor, but I think I'll get right to the question. What occurs now, Your Honor, under the Ninth Circuit's most recent decision of Flores-Torres is one of two things. This court can adjudicate the issue of citizenship. Or if the court feels that there's a material issue of fact, which I, after six long years of litigating this case, it doesn't seem to be another material issue in dispute, the court can dismiss the government's appeal and allow Judge Reed to enter the last section of the puzzle, which is to declare him a citizen. The court ordered that Mr. Arreta be released. And unless the government permitted him to file a naturalization petition non-pertinct, the government, and in fact, Judge Reed went further and said, you have 30 days to tell me what you're going to do. The government filed a letter, actually a brief, saying he's not in custody. And this is the extent of our obligation. And then shortly thereafter filed a motion for reconsideration under Rule 60. When Judge Reed denied that, within two weeks, the government filed an appeal. Okay, let's stop at your first. If we were to dismiss the appeal on the ground suggested by the government, which is there's no jurisdiction because there was no custody, then where would that leave you? Back to district court? Well, Your Honor, I think, first of all, reading the custody requirements that narrowly, goes against not only what Judge Reed ordered, but also the other cases that have been cited that indicate that the restraints that are not normally shared by an individual permits custody. So what's the custody? At this point, given the BIA's dismissal of the termination of the immigration proceedings, the government has no custody over Mr. Herrera. He was on bond by the district court. The only problem that remains... Okay, so he has no... Right now, everybody seems to agree that he's not in custody of the federal government, correct? The BIA... Yes or no? He's released. He's released. He's released. Yes, Your Honor. And is he under any sanction, continuing obligation? Yes, Your Honor. What? The continuing... The other restraints are this. Without a decision given in fact to Judge Reed's order, we have Mr. Herrera who may or may not be able to work because his status... That's not a restraint of the government. No, Your Honor. But it isn't a restraint of the government, but it is an offshoot of the fact that without a certification of citizenship or some formalized recognition of his status, he may not be able to work. He may not be able to travel. Have you gone back to apply this non-proton citizenship application? No, Your Honor. In fact, when the government appealed the final appeal in this case two weeks after Judge Reed denied the motion to reconsider, it divested the District Court of Jurisdiction to proceed further in the case. My next step undoubtedly would have been to file a motion for declaratory relief,  but when the government filed this appeal, my hands are tied at that point. Well, let's say this appeal, because everybody says he's not in custody now, in effect, other than, of course, he can't work. But assuming he's not in Federal custody, if this appeal is dismissed, then would you go to the District Court and ask for a declaratory judgment, and it would go through whatever process it would go through? If this Court feels that it cannot decide that issue, how could this Court decide that issue? Your Honor, under 1252, and actually under the courts, under Judge Reinhardt's opinion recently on Flores, Flores, I think, provided the 28-J letter, citizenship claims are properly before the District Court when an individual raises a claim of citizenship. I believe that was a holding, and Judge Reinhardt specifically indicated that the exclusive remedy is not, as the government says it is, that it's only in removal proceedings, but that an alien who has a, or a person who has a citizenship claim can bring habeas in the District Court. This Court can decide the issue of citizenship unless the Court feels that it needs more additional facts, and then the case goes back to the District Court. It seems to me that we don't have any jurisdiction, there's no habeas case before us anymore, it seems to me, because he's not in custody, he was released by the BIA. It seems to me, you tell me if I'm wrong, that that ends our, you know, real involvement in this case. And I think you're asking us basically to allow, in effect, pleadings to be amended, send forth a declaratory judgment action to resolve this state of limbo, so to speak, that ultimately has to be, I guess, adjudicated on some level. Don't you think it's best that we really let the District Court do that? And I don't even know whether we have the jurisdiction to send it back. Why can't you simply bring a new proceeding in District Court? He's released, he can't be removed from this country now. And just, you know, create a proper record and a proper set of papers and do it on that level. What's wrong with that? The only problem with that, Your Honor, and with all due respect to the government's position, I can anticipate, given the history of this litigation, I can anticipate either a refiling of another immigration removal proceeding. We're not going to get any, get very far with that in light of the fact that the government's already said that he's not to be removed. Well, I agree, Your Honor, but the government didn't appeal Judge Reed's order initially. Correct. And yet still, at this point, there's a multitude of arguments being raised about it. Right, but they haven't, nobody has credited those arguments one way or the other. That's their job. Their job is to raise arguments on behalf of the government, just like yours is on behalf of your client. Nobody has agreed with those arguments yet, so it doesn't give them any traction particularly, except in the world of advocacy. In the world of advocacy, I agree, Your Honor, except that at a certain point, just like there are beginnings to cases, and this case began in front of Judge Reed, and Judge Reed's order became final, at a certain point, the litigation was stopped. And what has occurred, and one of the things that has really become a disturbing point, is the shifting litigation positions of the government, without having really to face the consequences of the decisions that they made. What is the consequence of the government's decision not to appeal the district court's order? Well, but your client got, I won't say a windfall, but got an incredibly generous ruling a year after you were in district court. The BIA ruled that the government is stopped. So when you were in district court before, you didn't have the benefit of that ruling, correct? That's true. So there was some ambiguity about that. And now, that's one thing about which there seems to be no ambiguity, that you didn't have the benefit of that a year ago, or a year and a half ago. And I agree. And in going back to Judge Blanc's question, probably the best and most appropriate thing to do is, again, to dismiss the appeal, since it is given not only Judge Reed's ruling, but the BIA's decision, would be to dismiss that appeal and allow me, on behalf of Mr. Herrera, to file a motion for declaratory judgment. I don't want to say there's a settlement, but I'm hearing both sides saying that the appeal should be dismissed. You might have different reasons for it, but I think I'm hearing the same result here from both sides. But I think the proper thing to do, if we go down that line of reasoning, is to permit. I was unable to do it once the government filed a notice of appeal following the grant of the habeas petition. You should do it now, I think. Would that be proper? Well, I would love to do it now. I wish I had done it within that two-week period in front of Judge Reed. But I think the court probably should send it to Judge Reed with instructions to permit me to file that. I don't know the jurisdiction to do that. You can just simply start a whole brand-new proceeding and carve out your theory. Ultimately, this limbo scenario will evolve in some litigation form, and I think if that's the best place for the court in the first instance, I suspect it will be the district court, which will have jurisdiction, presumably, over that, to make a full record and to resolve this issue one way or the other. I think the government has a real problem here, it seems. I agree with the fact that the government has a real problem. The query that I have, and this is something that I have not been able to resolve. I'm not an appellate lawyer, Your Honors. I'm a trial lawyer, and I don't come up here often. You don't have to apologize for that in the district court, then. I do, and to a certain extent, because the query that I have is, when you ask whether I should file a new proceeding, it seems like the case below, in front of Judge Reed, is still the proceeding that I should go back to. I guess I have a question about that. I don't see why you didn't get everything that the district court stated in its October 2007 order, because it said either you're supposed to be released from custody on account of the removal proceedings, or the Department of Homeland Security should permit you to file your naturalization application. The BIA's ruling has now completely released your client from any removal proceedings. You've gotten what the district court ordered. That seems to be a closed book at this point. I would tend to agree, except for one thing that keeps troubling me, and that is when Judge Reed issued his order, again, we had an appeal to the BIA. That decision was not final. And Judge Reed, to a certain extent, was couching the second part of that order in term, as a logical end result of his exhaustion analysis, which indicated that Mr. Evrado did not have to exhaust his remedies, as the government has indicated, and that under Flores-Torres, he doesn't need to because he's not an alien. But I think I agree with the courts, actually all of your comments, that at this point, we're not the appellant, the government is. And their position has been that there has been no jurisdiction, or there was no jurisdiction in the district court, even though Flores-Torres indicates that there clearly was. And secondly, that he wasn't in custody when, and I'll give the courts indication, they took Mr. Evrado into custody in front of Judge Reed when they rescinded the order of removal and filed a new notice to appear before the immigration judge. He was taken physically into custody. It was only Judge Reed's intervening order releasing him on bond that kept him out of actual physical custody. And, but at this point, I do agree. The BIA's decision, as I mentioned in my supplemental letter, it guts the government's appeal. That appeal must be dismissed. There is no immigration proceeding pending against Mr. Evrado. And the government is precluded. They're stopped from claiming that he's an alien based on the final district court judges that ordered. I do have some work left to do. I agree. I... Kagan. Well, we're not going to give you legal advice. No, no, I understand. We'll be able to piggyback on the existing district court case or you have to file a new one, I don't know. But it seems that everybody agrees as of this stage, there's no custody. And without custody, the appeal itself is mooted. I mean, this is a, you know, immigration is a complicated area. We all agree with that. And, you know, where this case may go, nobody knows. I mean, the whole intricacies of citizenship are complicated. So... It seems to me that, you know, you're on the horns of this. Let me see where I have your practical concerns downright. If you're going to go ahead and apply for naturalization, you're fearful that the government's going to say he's not a person of good moral character because of his subsequent convictions. They're not going to agree on your naturalization application that you should go back non-potent in 1972. Possibly declaring to a judgment action would be a different vehicle which would open the doors to possibly get ultimately what you would like, which is, you know, citizenship. But I don't think we can do it here at this particular point in time for lots of reasons, not the least of which I don't think we have jurisdiction. I don't think we can confer citizenship upon it based upon the record and everything else we spoke about. But am I correct in sort of getting into your mindset as to which direction you would go in? Exactly. I mean, the government, again, reiterates its position that his naturalization petition, which was ordered by Judge Reed, will not be approved because of his convictions. However, they take that position as flawed because it assumes that Mr. Everett is an alien. I just don't think that this is the court right now that can do what you want. That's just my sense. I came into this morning thinking that that was probably going to be the conclusion. However, I do think that sending it to Judge Reed or certainly dismissing the appeal, I would agree with. But I think at this point, Judge Reed and I have a little bit left, a final puzzle to fill in. All right. Your Honors, I'd like to just address one of Judge Block's questions, which was what would happen if there was a declaratory judgment action. And what would happen is that Judge Reed already ruled that the first removal order was not unlawful. It would have been unlawful had Herrera been a citizen because the government cannot deport citizens. So Herrera is not a derivative citizen. If he were to apply for citizenship, presumably the Attorney General could not grant that because of the statute saying that he's not a person of good moral character because of the convictions involving moral turpitude and the narcotics conviction. The only mechanism by which Herrera could obtain citizenship is a non-caproton procedure, which is not contemplated by the INA. And a court cannot use estoppel to grant citizenship. The Supreme Court has been clear on that. So where this case would be left in a declaratory judgment action is the judge either granting it or denying it and the other side appealing it back to this court for a third time. And in that vein, I agree with Mr. de la Cruz's request that if this court remands the case, perhaps with instructions as to that issue. Instructions? What would be the instructions? As to whether or not the district court could use estoppel as a mechanism to adjudicate citizenship. All right. Anything further? All right. The case just argued, Herrera-Castaneda v. Alcantara is submitted. It's a complicated procedural history, as we all know, and we'll issue our decision in due course. Thank you for your arguments this morning.
judges: McKeown, Ikuta, Block